THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOSEPH GALLO, Defendant.

City Magistrate's Court of New York, Borough of Brooklyn, Flatbush Part, December 2, 1954.

*Edward S. Silver, District. Attorney (Salvador Rametta* of counsel), and *Patrick J. Healy* for plaintiff.

*David F. Price* for defendant.

CHARLES SOLOMON, M. The defendant is charged with the crime of assault in the third degree, committed on the 23d day of October, 1954, " In that while deponent was trying to keep a prisoner from escaping from deponent's custody this defendant did strike deponent with his clenched hands upon deponent's face and body ".

The complaining witness, Edward D. Nigro, testified that he is a police officer of the City of New York, connected with the Brooklyn headquarters; that on the 23d day of October, 1954, about 4:15 A.M., he observed one Albert Gallo in the vicinity of 112 Beverly Road, Brooklyn; that said Albert Gallo talked to five or six groups of people, in all about ten people; that he directed Gallo into the second floor of the above-named premises; that he and three other police officers followed Gallo in; that when he got upstairs, he identified himself to Albert Gallo, and that while " restraining " Albert Gallo, the defendant, Joseph Gallo, a brother of Albert Gallo, struck him twice. The officer further testified that he and three fellow officers were in civilian clothes; that he did not inform the defendant, Joseph Gallo, that he was a police officer, nor did anybody make that statement in his presence; and that he had no warrant for the arrest of Albert Gallo, nor did he have a search warrant. That, in substance, is the People's case.

The arrest and detention of Albert Gallo was without a warrant. The officer's testimony is that he saw Albert Gallo talk

to about ten men and then took him into custody and made him go up the stairs. Section 167 of the Code of Criminal Procedure defines arrest as follows: '' Arrest is the taking of a person into custody that he may be held to answer for a crime.'' Section 177 of the Code of Criminal Procedure, so far as pertinent follows: '' A peace officer may, without a warrant, arrest a person, 1. For a crime, committed or attempted in his presence ''. Officer Nigro admitted on the stand that he saw the defendant, Albert Gallo, commit no crime. The arresting officer, at no time, informed Albert Gallo of the cause of his apprehension and detention. The arrest and detention without a warrant was, therefore, unlawful and illegal. (*People* v. *O'Connor,* 257 N. Y. 473.) In the case of *People* v. *De Fore* (242 N. Y. 13) the court at page 18 said: '' But the arrest was not lawful. One who, acting without a warrant, arrests for a misdemeanor, exceeds the bounds of privilege, whether he be a private person or an officer, unless the crime has been committed or attempted in his presence (Code Crim. Pro., §§ 177, 183). The defendant had neither committed the crime of petit larceny in the presence of the officer, nor there attempted to commit it. He had not committed nor attempted it anywhere. There was no lawful arrest to which the search could be an incident.'' In the case of *People* v. *O'Connor* (*supra,* pp. 473-474), the defendant was arrested for a misdemeanor which was not committed in the presence of the officer. While in the station house, the officer attempted to search the defendant, whereupon the defendant resisted and struck the officer. The complete opinion of the Court of Appeals is as follows: '' The conviction was for the crime of resisting an officer while ' in the performance of his duty,' under section 1825 of the Penal Law. The arrest of the prisoner was for the commission of a misdemeanor. This crime had not been committed in the presence of the arresting officer; nor did the officer hold a warrant for the arrest. Therefore, the arrest was illegally made; the officer had no right to search the prisoner; the prisoner did not resist an officer in the performance of any duty; and no crime was committed. The judgments should be reversed and the information dismissed.'' Section 180 of the Code of Criminal Procedure provides: '' When arresting a person without a warrant the officer must inform him of the authority of the officer and the cause of the arrest, except when the person arrested is in the actual commission of a crime, or is pursued immediately after an escape.'' The officer never complied with this statutory requirement.

*People* v. *Cherry* (307 N. Y. 308), decided in the Court of Appeals July 14, 1954, is strikingly apropos. Cherry was convicted in the Kings County Court of Special Sessions on the charge of assault in the third degree based upon alleged unlawful use of force and violence on police officers. The Appellate Division, Second Department (282 App. Div. 948), unanimously affirmed, adhering to the same position after reargument. The Court of Appeals, four to two, reversed. The facts, stated in the prevailing and dissenting opinions, follow briefly: defendant, doing nothing improper, was accosted and seized by two strangers, in ordinary street attire, claiming to be police officers, late at night as he was about to enter his home in Brooklyn, after being observed conversing with several unknown persons. Defendant resisted, as a result of which, one of the police officers testified, he received medical attention at a hospital and was '' out sick '' several days. In the course of his resistance the unarmed defendant bit the police officer on the thumb. Judge Fuld, writing for the majority, said (pp. 309–310): '' The police officers were, as everyone acknowledges, guilty of an illegal arrest and an unlawful assault. (Code Crim. Pro., § 177; see, e. g., *People* v. *O'Connor,* 257 N. Y. 473 * * * Defendant had the privilege, therefore, of resisting and using ' force or violence ' against his assailants, even though they were police officers, ' to prevent an offense against his person * * * if the force or violence * * * [was] not more than sufficient to prevent such offense ' (Penal Law, § 246, subd. 3).''

Section 246 bears the significant and eloquent caption: '' *Use of force not unlawful in certain cases* '' and provides such force or violence may be used not only by the one immediately aggrieved but also '' by another person in his aid or defense ''. The situation would be the same had the police in the *Cherry* and instant cases been in full regalia, because, as Judge Fuld wrote for the majority (p. 310): '' Whether or not the police officers exhibited their badges to defendant is completely beside the point. A badge may not substitute for a warrant of arrest, nor excuse its absence, when one is required.'' The legal maxim that one is presumed to know the law extends to the police. In this and the *Cherry* case the police officers were in plain clothes, '' they appeared out of the night on a deserted street in Brooklyn '', in each case the defendant was observed in conversation with unknown persons, in each case there was apprehension notwithstanding the fact there was no crime committed in the presence of the police. Here, the police went further than in the *Cherry* case. Albert Gallo preceding

them, they proceeded up one flight of stairs into an American Legion hall where they found about nineteen men just standing around. They had no right there. They were not invitees. They were intruders and trespassers. They did not identify themselves, except that officer Nigro testified he informed Albert Gallo while "restraining" him that he was a police officer. There is no question that his brother Joseph was not so advised. However, as Judge FULD so strongly pointed out, had such identity been disclosed that would not have served as a substitute for legal authority. There is and can be none in a constitutional democracy like ours. Under these circumstances, Joseph Gallo, the brother of Albert, struck officer Nigro two blows. With what consequences, except that the arrest of Joseph immediately followed, the record does not disclose. On the question of the sufficiency of the force employed by the defendant, let it be noted that in the *Cherry* case the police officer was "out sick" several days, after receiving medical attention at a hospital. It was on the issue of the sufficiency of the force that the Court of Appeals divided in the *Cherry* case. The able representative of the police department legal bureau conceded the illegality of the arrest of Albert Gallo but contended there was no proof Joseph knew of it when he struck Nigro. The record is silent in this respect. But the stark facts stand out that sometime between four and five o'clock in the morning four strangers in civilian clothes "appeared out of the night" in a place where they had no legal right to be after one of them did what he had no legal right to do. Let us assume the police had proclaimed their identity, exhibiting their badges. Were the others present, including the defendant, required to take these strangers in civilian clothes who "appeared out of the night" at their word? The court has had and known of cases in which defendants were prosecuted for unlawfully impersonating police officers, and he distinctly recalls a comparatively recent one, in which the accused was in unlawful possession of a genuine police badge. Moreover, it is common knowledge among those in a position to know, that underworld characters, especially in the small hours of the morning, have invaded premises for criminal purposes, including robbery, and that they have on occasion pretended to be police. Can it be seriously argued that the defendant Joseph Gallo acted unreasonably or without legal justification under the circumstances? The court cannot say that he did and must therefore grant the motion of defense counsel for the dismissal of the complaint.