Nathan B. Sobel, J.
This case was tried without a jury. Although this case may be decided on the facts, the District Attorney has requested me to write an opinion on the issue of law in this case. That issue of law has never been decided in this State.
The defendant was indicted and tried for a violation of subdivision 5-a of section 1897 of the Penal Law, a felony. The testimony discloses that the defendant was arrested while carrying on the public streets a rifle loosely wrapped in newspaper. He had no license. There was no proof offered of intent to use same "unlawfully.
The issue of law is simple. Is a rifle included in the concealed weapons provisions of subdivisions 5 and 5-a of section 1897 of the Penal Law?
Section 1897, the “ dangerous weapon ” section of the Penal Law is a loosely drawn provision containing some 20 subdivisions. It was added to and amended some 32 times since it was originally included in the Penal Code of 1881. The inten *740 tion of the Legislature in the original enactment and later amendments has been obscured by contradictory provisions and bad draftsmanship. A proposal for redrafting is now before the Legislature.
I believe the issue can be clarified to some small extent by a study of the chronology of the amendments.
The present statute contains three prohibitions.
I. It is a crime to possess or carry “ with intent to use same unlawfully against another ” (subd. 1) any dangerous weapon. The history of this subdivision as well as the explicit language used indicated to me that it is broad enough to include rifles. The gist of this crime is the intent to use same against another.
II. It is a crime to have in possession “ any pistol, revolver, or other firearms of a sise which may be concealed upon the person” (subd. 4). This provision was added by chapter 195 of the Laws of 1911. It was the first time the Legislature had prohibited mere possession of weapons. Contemporaneous interpretation of the new statute by the courts (People ex rel. Darling v. Warden of City Prison, 154 App. Div. 413 [1913]) indicates that all possession, in a drawer at home or on the person, openly or concealed, was prohibited. Obviously subdivision 4 does not apply to rifles.
The gist of the statute is possession, but possession is prohibited only with respect to small arms “ of a size which may be concealed upon the person ”. Obviously possession of rifles is not prohibited by this subdivision.
TIT It is a crime to have or carry “ concealed upon his person * * * any pistol, revolver, or other firearm * * * without a * * * license” (subds. 5, 5-a). The gist of this crime is concealment. (People v. Demorio, 123 App. Div. 665 [1908]; People v. Carvelto, 123 App. Div. 822 [1908]). The concealment must be upon the person. (People v. Spillman, 309 N. Y. 295, 303; People v. Persce, 204 N. Y. 397.) It has been held in other jurisdictions that ‘ ‘ upon ’ ’ also means ‘ ‘ about ’ ’. (See Ann. 43 A. L. R. 2d 490, 494-509.)
This last prohibition, included in subdivisions 5 and 5-a of section 1897 is before me for interpretation. The question is: Did the Legislature ever intend to include rifles among such 1 ‘ other firearms ’ ’ which may not be carried concealed upon the person.
A study of the history of subdivisions 5 and 5-a will be helpful.
The first thing to observe is that the prohibition against carrying concealed weapons is the oldest dangerous weapon enactment. It long precedes the Penal Code of 1881. Thus *741 the carrying of concealed weapons was prohibited more than 50 years before possession of dangerous weapons was prohibited for the first time in 1911. (Subd. 4 added by L. 1911, ch. 195.) Thus for many years open possession of pistols and revolvers and all other firearms was permissible. The law only prohibited concealment of weapons.
But after 1911, the “ concealed” weapon provision (subd. 5) became to a large extent academic. Since subdivision 4 prohibited mere possession a conviction could be obtained under that subdivision without the necessity of proving concealment. Since, after 1911, possession of weapons “ of a size which may be concealed upon the person ’ ’ was a crime whether the weapon was possessed at home or carried concealed upon the person, a prosecution under subdivision 5 would ordinarily be brought only if the weapon was of a larger type which could not be concealed upon the person.
The court in People ex rel. Darling v. Warden of City Prison (supra) referred obliquely to this situation in interpreting subdivision 4.— ‘ ‘ Under the construction now sought to be given to the act it would be perfectly legal to keep at one’s bedside or in a cabinet a blunderbuss or a horse pistol, or whatever modern weapons correspond in size to those ancient arms, but unlawful to so keep their smaller rélative of a size that might be concealed upon the person ” (p. 426). The court could have added that it is unlawful to carry a pistol or revolver openly upon the street but perfectly lawful to carry openly a horse pistol or a blunderbuss. (I believe it is of some significance that the court in mentioning the larger arms which may not be concealed upon the person, made no mention of rifles.)
It is interesting to observe that the practice developed among District Attorneys when a defendant was arrested for carrying a concealed pistol or revolver of indicting on separate counts for possession (subd. 4) and for concealment (subd. 5 or 5-a). There was some justification for this practice in early years because possession was a misdemeanor and concealment was a felony. But today they are both misdemeanors or felonies depending upon previous conviction or under subdivision 5-a on whether the pistol or revolver is loaded.
None of the foregoing is determinative of legislative intent with respect to rifles. I refer to the early history and interpretation of the pertinent subdivisions only to establish that today a pistol or revolver may not be carried in the street openly or concealed. But a rifle may be possessed in the home or carried openly upon the person on the street without violating any law.
*742 The reason for the deference and immunity extended to rifles in the earliest enactments lies in the misconstruction of the Second Amendment to the Constitution of the United States. — “A well regulated Militia, being necessary to the security of a free State, the fight of the people to keep and bear Arms, shall not be infringed.” And its counterpart in section 4 of our Civil Rights Law (Rev. Stat. of N. Y., 1828, part I, ch. IV, § 3).
Thus despite Presser v. Illinois (116 U. S. 252 [1886]) and the long line of cases holding that the first ten amendments are not limitations against the States, we find our own appellate courts as late as 1913 stating — People ex rel. Darling v. Warden of City Prison (154 App. Div. 413, 421—422, supra) — “If the Legislature had prohibited the keeping, of arms, it would have been clearly beyond its power ’ ’. Later in the same case (p. 422) quoting from English v. State (35 Tex. 473): ‘ ‘ The word ‘ arms ’ in the connection we find in the Constitution of the United States, refers to the arms of a militiaman or soldier, and the word is used in its military sense. The arms of the infantry soldier are the musket and bayonet ”. Later referring to the prohibition in subdivision 4 of section 1897 against possession of concealable weapons, the court said (pp. 422-423): “ In the statute at bar the Legislature has not prohibited the keeping of arms. For the safety of the public, for the preservation of public peace, in the exercise of the police power * * * the Legislature has passed a regulative, not a prohibitory act.” (See, also, People v. Perce, 204 N. Y. 397, supra [1912]; Matter of Moore v. Gallup, 267 App. Div. 64 [1943].)
It is my conclusion that the Legislature in enacting the ‘1 concealed ” weapon provision (subd. 5) carefully avoided including rifles because of the Federal constitutional provision and the Civil Rights Law provision. (Certainly this was in their minds in enacting the 1911 “ concealable ” weapon provision which prohibited possession only of weapons of a size which may be concealed on the person.)
I find some support for my conclusion in the early history of the concealed weapon provision. When incorporated as section 412 in the Penal Code of 1881 it read: “A person who carries concealed about his person any kind of fire-arms * * * such as is usually employed in attach or defense of the person, is guilty of a.misdemeanor.” The italicized language was intended to distinguish between weapons which could be used for personal attack or defense as distinguished from weapons which would be “necessary to the security of a free State”. And when after several amendments subsequent to 1881, mainly local *743 licensing provisions, that section was incorporated in the Penal Law of 1909, it read “ Any person * * * who shall have or carry concealed upon his person * 0 * any pistol, revolver, or other fire-arm ” etc. (italics added), the Legislature intended to specify more particularly those weapons which are commonly used for unlawful purpose and therefore eliminated the phrase ‘1 usually employed in attack or defense of the person ”. Changing the word “ about ” to “ upon ” may also have had some significance with respect to rifles. It is practically impossible to conceal a rifle “ upon ” the person. (Cf. Hampton v. Commonwealth, 257 Ky. 626.)
My conclusion is reinforced by the fact that the licensing provisions in subdivisions 7, 8 and 9 speak solely of licenses for pistols and revolvers. No mention is made of licensing possession or concealment of any other kind of weapon and I am not aware that any license has ever been issued in this State for carrying or for concealment of a rifle.
Further, the Legislature in enacting section 1897-a in 1916 with respect to possession, sale and use of firearm silencers, used the term “ gun, revolver, pistol or other firearms ” (italics added) indicating a specific intention to include rifle silencers.
Also in section 1898-a, added in 1936, which creates a presumption of illegal possession of weapons found in automobiles, the Legislature specified pistols, machine guns, sawed-off shotguns, but not shotguns or rifles.
These provisions indicate that the Legislature is able to distinguish between guns and other firearms.
The provisions of subdivision 3 which permit possession of rifles by persons under 16 for rifle range practice has no significance (as contended for by the District Attorney). It is obviously intended as an exception to the provisions of subdivision 1 which prohibits possession under certain circumstances of “ dangerous or deadly ” weapons including rifles and of section 1896 which prohibits sale of “ guns ” or “ air-guns ” to persons under 16 years. Obviously the drafter of that provision felt it was cheaper to pass an unnecessary law than to look up the law.
Under such circumstances I cannot hold despite the undoubted fact that a rifle is commonly designated a firearm, that the use of that term in subdivisions 5 and 5-a by the Legislature was intended to include rifles.
It is not surprising that this issue has never before been decided in this State. A rifle ordinarily is not and cannot be concealed upon the person or in the clothing of the person. Some States prohibit the concealment of weapons “ about ” the per *744 son, or “ on or about ” the person and some even specify “ in an automobile (People v. Frost, 125 Cal. App. [Supp.] 794.) But our statute requires concealment “ upon ” the person.
The definition of ‘ ‘ concealment ’ ’ also differs in the various States. Some States hold that the word “ concealed” means ‘ ‘ willfully or knowingly covered, or kept from sight ’ ’ (Owens v. State, 31 Ala. 387, 389). Other States hold that concealed means “ secreted, screened, or covered in such a manner and to such an extent as to hide the nature and character of the weapon from the view of persons who might have been near the defendant and whose view would not have been obscured otherwise than by such screening, secreting or covering.” (Turley v. Commonwealth, 307 Ky. 89.)
Thus at one extreme, there is required proof of intention to conceal for nefarious purpose and at the other, actual concealment, intentional or unintentional, for nefarious purpose or for perfectly legal purpose.
This case does not require me to decide what proof is necessary in this State. The purpose of all concealment statutes is clear. At the time they were enacted, the open carrying of weapons upon the person, was not prohibited. The purpose of the concealed weapons statutes was to prevent men in sudden quarrel or in the commission of crime from drawing concealed weapons and using them without prior notice to their victims that they were armed. The person assailed or attacked would behave one way if he knew his assailant was armed and perhaps another way if he could safely presume that he was unarmed.
The entire subject of concealment, partial concealment, intentional concealment and the necessity for criminal or nefarious intent is fully discussed and annotated in American Law Reports (43 A. L. R. 2d 510, 544). For the purpose of this opinion these propositions need not be discussed.
For in the instant case, the police officer who observed the defendant, instantly recognized that the object carried by the defendant loosely wrapped in a newspaper was a rifle. Under such circumstances, I ruled that the People had failed to establish beyond a reasonable doubt that the rifle was concealed. I would reach the same conclusion if the rifle were carried in a canvas or leather gun case.
Thus on the law and on the facts I find the defendant not guilty.