Alexander W. Kramer, J.
The defendant stands before the court, charged with a violation of section 1851 of the Penal Law.
On August 21, 1967, at approximately 3:30 in the forenoon thereof, the arresting officer, Patrolman Bebollal, came upon the defendant on Clarke Street, in the Hamlet of Brentwood, Town of Islip, County of Suffolk and State of New York. Three other individuals were nearby. Bebollal ordered the defendant to drop the can of beer which he had in hand, and directed him to leave. The defendant failed to comply with Bebollal’s directive. In the *317 interim, another police officer, Patrolman Franco, had arrived upon the scene: he heard Rebollal’s remarks addressed at the defendant.
Thereupon Rebollal left his police vehicle. He told defendant that he was under arrest for disorderly conduct and for violation of an ordinance of the Town of Islip. When the defendant failed to place his hands upon the police vehicle; as Rebollal told him to do, Rebollal proceeded to place handcuffs upon the defendant. A scuffle ensued. Franco came to RebollaPs assistance.
It is interesting to note that both officers were in full uniform; they drove clearly marked police vehicles.
Thereafter three charges were preferred against defendant:
1. The violation of a Town of Islip ordinance — the consumption of an alcoholic beverage in a public place.
2. Disorderly conduct in violation of section 722 (subd. 1) of the Penal Law.
3. Interference with a public officer contrary to section 1851 of the Penal Law.
The defendant moved to dismiss the first charge. The motion was granted because the Town Ordinance in question was held unconstitutional.
The disorderly conduct charge was tried. The information was amended so as to charge subdivision 3, rather than subdivision 1. After trial, the defendant was found not guilty.
There has been a trial as to the third charge. Defendant now contends that, since the charge involving the alleged violation of the Town of Islip Ordinance was dismissed on motion, and since the disorderly conduct charge resulted in a finding of not guilty .after trial, the base upon which the charge of violation of section 1851 of the Penal Law rests must fall — since the ensuing arrest was illegal. He argues that, the arrest being illegal, the violation could not logically follow. He cites four cases to support his position.
In People v. Richter (265 App. Div. 767, 769) inspectors employed by the New York City Department of Markets attempted to seize a diamond ring; they desired to verify the weight thereof to support a possible charge of a violation of the Penal Law.
“ The inspectors conceded that at that time they did not intend to make an arrest. They admitted that they were then unable to tell whether Penal Law, section 421, which prohibits false advertising, had been violated, and could not know whether this was so until the ring had been examined by an expert, and the stone weighed. In order to verify their suspicions that a crime might have been committed, they expressed their intention to *318 take the ring out of the store, and to bring it to the office of an expert jeweler selected by their department. The expert would have had to remove the stone from the ring in order to weigh it.” (Emphasis supplied.)
The court held that, since there had been no arrest, there had been no lawful seizure.
In People v. Cherry (307 N. Y. 308, 309-310) the defendant, while “ doing absolutely nothing improper,” was accosted by two strangers in ordinary street attire. They told him that they were police officers; they attempted to arrest brm for an assault, third degree, not committed in their presence. He resisted. The court observed: “ The police officers were, as everyone acknowledges, guilty of an unlawful arrest and an unlawful assault. (Code Crim. Pro., § 177 [and cases cited].) Defendant had the privilege, therefore, of resisting and using 1 force or violence ’ against his assailants, even though they were police officers, ‘to prevent an offense against his- person * * * if the force or violence * * * [was] not more than sufficient to prevent such offense ’ (Penal Law, § 246, subd. 3).”
In People v. Daniels (285 App. Div. 619) the defendant allegedly said “Hello, Honey: that’s my baby ” or words to that effect to a passenger in the car of a passing motorist who had asked police officers directions. One of the officers reprimanded defendant and then proceeded to place him under arrest. He was not told why or given any reason for the arrest. No charge of public intoxication or disorderly conduct was ever lodged against him.
In reversing defendant’s conviction for resisting an arrest, the court stated (p. 624):
“ The appellant was arrested without a warrant. Under such circumstances the arresting officer must inform him of the cause of his arrest, except where the person is in the actual commission of a crime, or is pursued immediately after an escape. The exceptions are not pertinent to this case. The appellant was not engaged in the commission of a crime nor was he an escaped person.” (Emphasis supplied.)
Finally, defendant rests upon People v. Gallo (206 Misc. 935). In that case there was resistance to an arrest of defendant’s brother by the defendant. The police officers were in civilian attire; they did not inform the defendant that they were police officers; there was no warrant for the apprehension of the arrestee; nor did the police officers have a search warrant.
The court held no valid arrest; hence no unlawful interference with peace officers.
*319 But the fact pattern in this case is different. The police officer was in full uniform; he had arrived in a clearly marked police vehicle. He thought an offense or crime had been committed in his presence. He had the right to make an arrest. (Code Crim. Pro., § 177, subd. 1.)
Patrolman Rebollal was not an insurer of the outcome of the charges. It was not his function to determine the validity of the Town Ordinance or the merits of the charge of disorderly conduct ; that lay peculiarly in the province of the court.
It has been held that, wher'e a motorist resisted arrest on a speeding violation committed in the presence of the officer; where the speeding violation was subsequently dismissed after trial — the conviction for resisting an officer in the proper performance of his duty was proper. Subdivision 1 of section 177 of the Code of Criminal Procedure was held applicable. (People v. Meldron, 19 N Y 2d 608.)
The defendant is found guilty as charged.
He shall appear before the undersigned for sentencing on the 12th day of December, 1968, at the Sixth District, Waverly Avenue and Second Street, Patchogue, New York, at 9:30 o’clock in the forenoon of that day, or as soon thereafter as counsel can be heard.