■ VINCENZO CAROLLO, Plaintiff, v CONSOLIDATED EDISON Co. OF NEW YORK, INC., Defendant and Third-Party Plaintiff-Respondent. NARCO ENTERPRISES, Third-Party Defendant-Appellant.—In a negligence action to recover damages for personal injuries, the third-party defendant appeals, as limited by a stipulation entered into between the parties on July 12, 1976, from so much of a judgment of the Supreme Court, Kings County, entered April 26, 1976, as is in favor of the defendant third-party plaintiff and against it, for the amount of damages awarded to plaintiff against the said defendant. Judgment affirmed insofar as appealed from, with costs. On September 30, 1971 the third-party defendant-appellant, Narco Enterprises (Narco), was performing certain excavation work for Consolidated Edison Co. (Con Ed), the third-party plaintiff-respondent, pursuant to a contract entered into between them in August, 1971. While working in the trench, plaintiff and two coworkers detected the presence of gas and informed their foreman, James O'Halloran, who notified Con Ed. Based upon the information supplied by O'Halloran, or as the result of an independent observation by one of its own employees, Con Ed dispatched a gas crew to the job site. Prior to the arrival of the Con Ed gas crew, O'Halloran departed to check on another job several blocks away. O'Halloran left plaintiff and his coworkers with instructions to finish excavating the trench and to insert ducts into holes in a manhole wall. The insertion holes had been drilled earlier in the day by other Narco employees who primarily did drilling work. Although O'Halloran was aware that there was an exposed concrete duct containing a cable carrying 13,000 volts of electricity on the opposite side of, and several feet down the trench from, the manhole wall, he did not inform plaintiff or the two coworkers of its existence. By noon the gas crew had discovered a six-inch crack in a Con Ed gas main, only 10 feet from the Narco trench, and had taken temporary measures to seal the leak. Between noon and 12:30 P.M. plaintiff and his two coworkers went to lunch. During this time the Con Ed gas crew was drilling and excavating in order to permanently repair the gas leak. When plaintiff and his coworkers returned from lunch they took a jackhammer from the Con Ed gas crew and commenced drilling. Plaintiff and his coworkers had never previously operated a jackhammer and it is disputed whether the three Narco employees took the jackhammer with the permission of the Con Ed gas crew. Plaintiff's reason for taking the jackhammer is also in dispute. O'Halloran stated that the holes already drilled were sufficient in size, but that plaintiff may have had difficulty inserting the ducts and may have intended to enlarge the holes. Plaintiff and his coworkers stated that a Con Ed foreman had arrived after O'Halloran left and had directed them to drill two new holes. One of plaintiff's coworkers commenced drilling, but was overcome by the leaking gas and ceased work. Plaintiff took the jackhammer and moments later, having put the jackhammer through the duct carrying the cable with 13,000 volts of electricity, was rendered unconscious by an electric shock. Plaintiff alleged, in part, that his senses were impaired by the leaking gas which Con Ed was obligated to protect against. The jury returned a general verdict in favor of plaintiff. Trial Term determined the third-party action in favor of Con Ed,

concluding that there was concurrent negligence by Narco which caused plaintiff's injury. By virtue of certain provisions in the contract between Con Ed and Narco, Narco was required to provide competent supervision, to keep the work site safe and free from avoidable dangers and, in an emergency affecting the work or the safety of life, to act to prevent such threatened loss or injury. O'Halloran's failure to warn plaintiff of the live cable, his failure, by his absence, to stop work in the trench after one employee was overcome by the leaking gas, and his additional failure, by his absence, to prevent plaintiff, who had never previously operated a jackhammer, from using the tool, support Trial Term's finding of negligence on the part of Narco. O'Halloran was obligated to insure the safety of plaintiff and his coworkers and these omissions which, at least in part, occasioned plaintiff's injury, amount to negligence and make applicable the indemnity provision in the contract between Narco and Con Ed. The indemnity clause provides that Narco will indemnify Con Ed and save it harmless from "all liability arising from injury to person or property occasioned wholly or in part by any act or omission of the Contractor [Narco], his agents, servants or employees". Con Ed is not barred from seeking indemnification against Narco even though Con Ed has been guilty of active negligence (see *Margolin v New York Life Ins. Co.,* 32 NY2d 149; *Liff v Consolidated Edison Co. of N. Y.,* 29 AD2d 665, affd 23 NY2d 854). Narco places much reliance upon *Lopez v Consolidated Edison Co. of N. Y.* (40 NY2d 605) where, in a third-party indemnification action, Con Ed was denied recovery. *Lopez* is inapplicable to this case as, in *Lopez,* the court determined that there had been no negligence by the contractor. In *Lopez* Con Ed had its own supervisor at the job site who directed the contractor's employees to continue working notwithstanding their claims that gas was present. A gas explosion occurred moments after the Con Ed supervisor ordered them to continue working. The court concluded, relying upon custom, practice and the circumstances of that case, that it was Con Ed's responsibility to insure that there was no gas present. As the facts in this case indicate, there were several actions which Narco could have taken to prevent plaintiff's injury. The failure to so act constitutes negligence on its part. Hopkins, J. P., Margett, Damiani and Rabin, JJ., concur.